**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MARCUS ROSSER, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 16-00381-MN |
| | ) | |
| THOMAS DONOVAN, an individual, JOHN MIKUS, an individual, THOMAS ORZECHOWSKI, an individual, JEFFREY GEORTLER, an individual, ERIC CHRISTOPHER, an individual, and TIMOTHY COLLINS, an individual, | ) ) ) ) ) ) | TRIAL BY JURY DEMANDED |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
RENEWED MOTION FOR SUMMARY JUDGMENT</u>**


NEW CASTLE COUNTY OFFICE OF LAW
Mary A. Jacobson (Bar ID No. 3508)
Assistant County Attorney
E-mail: maryjacobson@newcastlede.gov
New Castle County Government Center
87 Reads Way
New Castle, DE 19720
Telephone: (302) 395-5130
Facsimile: (302) 395-5150
*Attorney for Defendants*


Dated: October 7, 2019

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................. ii

NATURE AND STAGE OF PROCEEDINGS ...........................................................................1

SUMMARY OF ARGUMENT ...........................................................................................3

STATEMENT OF FACTS ...............................................................................................4

     The Shooting and Rosser's Arrest and Conviction ...........................................................4

     Rosser's Unlawful Resistance ...................................................................................4

     Rosser's Deposition .............................................................................................6

ARGUMENT ...........................................................................................................10

I.     SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THE OFFICERS' ACTIONS WERE OBJECTIVELY REASONABLE AS A MATTER OF LAW AND THEY ARE ENTITLED TO QUALIFIED IMMUNITY. ...............................10

     A.  The Use of Force Was Reasonable Under the Circumstances Because Rosser Refused Police Orders, Engaged in Conduct the Officers Perceived as Threatening, and Continued to Resist the Officers' Efforts to Collect Evidence During Execution of the Search Warrant. ...........................11

     B.  Rosser Has Failed to Raise any Genuine Issue of Material Fact and his Allegations Are Inconsistent and Unsupported by Objective Evidence. ...............14

     C.  Rosser's Claim that the Handcuffs Caused Injury is Negated by Objective and Undisputed Evidence. ...........................................................16

     D.  Rosser Has Not Alleged Any Facts Regarding Defendants Collins's and Christopher's Presence of Involvement in the Holding Room Use of Force thus a Duty to Intervene Did Not Exist as a Matter of Law. ............................17

II.    ROSSER'S CLAIM FOR "EMOTIONAL INJURIES" IS INSUFFICIENT TO ESTABLISH A CLAIM FOR INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS. ...........................................................18

CONCLUSION ........................................................................................................19

# TABLE OF AUTHORITIES

Page

## CASES

*Barrett v. McDonald,*
  2015 WL 5679732 (D. Del. Sept. 25, 2015)...........................................................................19

*Bell v. Wolfish,*
  441 U.S. 520 (1979)...........................................................................................................12

*Bonilla v. City of York,*
  2016 WL 3165619 (M.D. Pa. 2016) ....................................................................................14

*Burbage v. City of Wilmington,*
  461 F. Supp. 2d 236 (D. Del. 2006)......................................................................................14

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986)...........................................................................................................10

*Damiani v. Duffy,*
  2018 WL 5881526 (3d Cir. Nov. 9, 2018)..........................................................10, 14, 15, 16

*Giles v. Davis,*
  427 F.3d 197 (3d Cir. 2005).................................................................................................16

*Gonzalez v. Sec'y of Dep't of Homeland Sec.,*
  678 F.3d 254 (3d Cir. 2012).................................................................................................14

*Graham v. Connor,*
  490 U.S. 386 (1989)......................................................................................................11, 12

*Graham-Smith v. City of Wilkes-Bare,*
  2017 WL 1386232 (W.D. Pa. Apr. 18, 2017)...................................................................16, 17

*Ingraham v. Wright,*
  430 U.S. 651 (1977)...........................................................................................................12

*Joynes v. Meconi,*
  2006 WL 2819762 (D. Del. 2006) ........................................................................................14

*King v. McKenna,*
  2105 WL 4040437 (Del. Super. June 29, 2015) ....................................................................19

*Kopec v. Tate,*
  361 F.3d 772 (3d Cir. 2004).................................................................................................12

*Majette v. Turner,*
 2017 WL 3055509 (D.N.J. July 18, 2017) ........................................................... 11

*Mullenex v. Luna,*
 136 S.Ct. 305 (2015) ........................................................................................11

*Mumtaz v. Etihad Airways & Airlines,*
 2014 WL 7405216 (D.N.J. Dec. 30, 2014) ..........................................................15

*National State Bank v. Federal Reserve Bank of New York,*
 979 F.2d 1579 (3d Cir. 1992) ............................................................................10

*Podobnik v. United States Postal Serv.,*
 409 F.3d 584 (3d Cir. 2005) ..............................................................................10

*Samuels v. Hall,*
 2004 WL 1635529 (D. Del. July 19, 2004) ........................................................14

*Sanders, v. Workman,*
 2003 WL 722189 (D. Del. Feb. 13, 2003) ..........................................................14

*Scott v. Harris,*
 550 U.S. 372 (2007) .........................................................................................10

*Sharrar v. Felsing,*
 128 F.3d 810 (3d Cir. 1997) ..............................................................................12

*Smith v. Mensinger,*
 293 F.3d 641 (3d Cir. 2002) ..............................................................................17

*Tracy v. Freshwater,*
 23 F.3d 90 (2d Cir. 2010) .................................................................................12

*Wilson v. Miller,*
 2018 WL 5817006 (D. Del. Nov. 5, 2018) ....................................................17, 18

## UNITED STATES CONSTITUTION

U.S. Const. amend. IV ..............................................................................................11, 12

## STATUTES

10 *Del. C.* § 4011(a) .................................................................................................19

10 *Del. C.* § 4012 .....................................................................................................19

42 U.S.C. § 1983 .................................................................................................................14

**<u>COURT RULES</u>**

Fed. R. Civ. P. 56(c) ...........................................................................................................10

## NATURE AND STAGE OF THE PROCEEDINGS

This case arises out of the alleged use of excessive force by New Castle County police officers during the execution of a search warrant in a holding room at New Castle County Police Headquarters.  D.I. 1.  Plaintiff Marcus Rosser ("Rosser") is currently an inmate at South Woods State Prison in Bridgeton, New Jersey.  All defendants are New Castle County police officers.

On May 23, 2016, almost two years after the alleged use of excessive force, Rosser filed a Complaint naming Thomas Donovan, John Mikus, Thomas Orzechowski, and Mathew Astfalk as defendants.  *Id.*  Rosser filed an Amended Complaint on June 23, 2017 where he only named Thomas Donovan, John Mikus, and Thomas Orzechowski as defendants.  D.I. 29.  On April 13, 2018, Rosser filed a Second Amended Complaint naming Thomas Donovan, John Mikus, Thomas Orzechowski and added Jeffrey Geortler, Eric Christopher, and Timothy Collins as defendants (collectively referred to as "Defendants").  D.I. 57.  On May 7, 2018, Defendants filed their Answer to the Second Amended Complaint.  D.I. 64.

On December 13, 2018, Defendants filed a Motion for Summary Judgment and Opening Brief in support thereof, which relied, in part, on facts provided by Rosser during his deposition testimony.  D.I. 102, 103.   On January 18, 2019, Rosser filed an Answering Brief.  D.I. 107.  On the same day, Rosser informed the Court that he was not provided an opportunity to review his deposition transcript pursuant to Fed. R. Civ. P. 30(e).  D.I. 106 (Rosser letter docketed January 18, 2019).   By Order entered on January 30, 2019 and upon the request of Defendants, the Court provided Rosser time to review his deposition transcript and the Court amended the briefing schedule to allow Rosser an opportunity to file an amended answering brief.  D.I. 112.

On March 3, 2019, Rosser submitted an errata sheet seeking to amend his deposition testimony.  D.I. 112.  On March 29, 2019, Defendants moved to strike portions of Rosser's errata

sheet that asserted privilege, manufactured factual disputes, and otherwise served to bolster his testimony and further requested amendment of the briefing schedule pending the Court's ruling on the Motion to Strike.  D.I. 123.  On July 10, 2019, the Court granted Defendants' Motion to Strike, in part, Plaintiff's Errata Sheet and to Revise the Summary Judgment Briefing Schedule and allowed Rosser 30 days to file a revised answering brief.  D.I. 130.  Rosser failed to file a revised answering brief and on August 22, 2019, the Court issued a Show Cause Order requiring Rosser to show cause why the case should not be dismissed.  D.I. 132.  By letter entered on September 4, 2019, Rosser filed a response to the Court's Show Cause Order.  D.I. 133.

On September 9, 2019, the Court denied Defendants' Motion for Summary Judgment without prejudice and with leave to renew with the updated deposition transcript and also set a briefing schedule.  D.I. 134.  The Court entered a revised briefing schedule on September 26, 2019. D.I. 137.

Defendants today filed a Renewed Motion for Summary Judgment.  This is Defendants' Opening Brief in Support of their Renewed Motion for Summary Judgment.

## SUMMARY OF ARGUMENT

I.     Summary judgment should be granted because the Officers' actions were objectively reasonable as a matter of law and they are entitled to qualified immunity.

    a.     The use of force was reasonable under the circumstances because Rosser refused police orders, engaged in conduct the Officers perceived as threatening, and continued to resist Officers' efforts to collect evidence during execution of the search warrant.

    b.     Rosser's allegations are inconsistent and unsupported by objective evidence.

    c.     Rosser's claim that the handcuffs caused him injury and were excessive force is negated by objective and undisputed evidence.

    d.     Rosser also fails to allege any facts sufficient to establish that Defendants Collins and Christopher failed to intervene and the undisputed facts show that they were not in the vicinity of the use of force when it occurred.

II.    Rosser's claims for "emotional injuries" should be dismissed because they are not sufficiently pled as either intentional or negligent infliction of emotional distress.

## STATEMENT OF FACTS

### The Shooting and Rosser's Arrest and Conviction

On the night of July 13, 2014, shortly after a shooting occurring at Georgetown Village Apartments, Rosser was positively identified as the shooter, taken into custody, and detained at New Castle County Police Headquarters turnkey.  A27.  Following a jury trial, Rosser was convicted of first degree robbery, first degree assault, two counts of possession of a firearm during the commission of a felony, possession of a firearm by a person prohibited, and carrying a concealed deadly weapon and sentenced to 18 years of imprisonment.  A1-A16.

### Rosser's Unlawful Resistance

New Castle County Police Detective Thomas Orzechowski obtained a search warrant to obtain DNA and gunshot residue from Rosser.  A56-A63.  The morning after the shooting occurred, at approximately 5:00 a.m., Senior Corporal Thomas Donovan reported for duty as the "turnkey officer."  A19.  At approximately 5:40 a.m., Det. Orzechowski and Detective John Mikus, accompanied by Officer Jeffrey Geortler and Cpl. Donovan (collectively referred to as the "Officers") went to room where Rosser was being held to execute the search warrant.  A19, A27, A34, A41.

Cpl. Donovan unlocked and opened the door to the holding room.  A27.  Det. Mikus was holding the evidence collection vials and intended to enter the room, but Rosser was standing at the doorway and stepped through the door towards Det. Mikus, coming within approximately one foot of Det. Mikus.  A19, A27, A34, A41.  Det. Mikus perceived Rosser's actions as physically threatening and told Rosser to sit down.  A34.  Rosser refused the order, did not back away from the door, and told the Officers he would not sit down.  A27, A34, A41, A108-A110.  Fearing that Rosser was going to push him, Det. Mikus stepped back and turned to put the evidence vials on

the ground.  A34, A41.  As Det. Mikus stepped back, Cpl. Donovan attempted to enter the room from the right side of the doorway and came face-to-face with Rosser.  A19, A27.  The Officers told Rosser to back up and again ordered him to sit down, but Rosser did not comply.  A27, A108-A112.

Cpl. Donovan extended his arms outward to move Rosser back into the room, but Rosser pushed Cpl. Donovan in the chest and attempted to exit the holding room.  A19, A27, A41.  Cpl. Donovan immediately employed a control tactic and grabbed Rosser by his shoulder/head to bring him to the ground.  A19, A27, A34, A41.  However, Rosser lowered his bodyweight and got into a crouching position to resist.  A19, A27, A41.  Cpl. Donovan pulled Rosser in a downward motion out of the doorway, and both men fell to the ground against a desk located outside of the holding room.  A19, A34, A41.

Once Rosser was on the ground, the Officers attempted to control his movements.  A34, A41.  Cpl. Donovan kept telling Rosser to "stop fighting" and "stop resisting."  A19, A27.  Det. Mikus attempted to secure Rosser's upper body with his hands, but Rosser continued to attempt to get up.  A34.  Cpl. Donovan delivered several strikes with a closed hand to Rosser's upper body and head, which had no effect on getting Rosser to comply.  A19, A27, A34, A41.  Det. Mikus administered control tactics in the form of defensive strikes to Rosser's abdomen/ribcage.  A34.  Det. Mikus pulled Rosser's right arm behind his back to cuff his right wrist, but Rosser continued to forcefully pull back.  A34, A41.  Det. Mikus was able to cuff Rosser's right hand.  A27, A34, A41.  Det. Mikus and Rosser continued to roll around on the floor, and Det. Mikus observed the handcuff tighten on Rosser's right wrist.  A34, A41.  Det. Orzechowski attempted to control Rosser's left hand and get it behind Rosser's back to apply the left handcuff.  A27.  Rosser repeatedly scratched Det. Orzechowski's hands, breaking the skin.  *Id.*  Det. Mikus was able to

secure Rosser's left wrist in the other half of the handcuffs.  A27, A34.

Shackles were placed on Rosser, however he continued to resist.  A19, A27, A41.  Det. Orzechowski placed a knee on Rosser's back in attempt to control him.  A27-A28.  Rosser continued to try to scratch Det. Orzechowski while he was being held down.  A28.  Det. Orzechowski told Rosser to "stop trying to scratch me," but Rosser continued.  A19, A28.  Det. Mikus also held Rosser's wrists while Rosser was in handcuffs.  A34.  Rosser clawed at Det. Mikus and ripped Det. Mikus' latex gloves.  *Id.*

Det. Orzechowski then heard Rosser prepare to spit.  A28.  Rosser turned his head towards Cpl. Donovan and spat a red substance in the direction of Cpl. Donovan.  A19, A28.  Cpl. Donovan turned Rosser's head away from the officers to face the wall and held his head in that position until Ofc. Geortler could place a spit sock on Rosser's head.  *Id.*  Rosser was held in the same position until an ambulance crew arrived.  A28.

Rosser complained that his handcuffs were too tight when he was placed on the stretcher.  A123.  Cpl. Donovan checked them, found them to be a little tight, loosened them and then double locked them.  A19.  Ofc. Geortler double-checked Rosser's handcuffs once he boarded the ambulance.  A41.

Officer Timothy Collins ("Ofc. Collins") and Detective Eric Christopher ("Det. Christopher") accompanied Rosser to Christiana Care Hospital and remained with him until they returned to Police Headquarters.  A55.  They were not present during the use of force.  A47, A55.

**<u>Rosser's Deposition</u>**

Rosser was deposed on October 24, 2018.  A64-A196.  Rosser had difficulty remembering the events surrounding the July 14, 2014 traffic stop (A102-A103, A112-A117, A117, A120) and tried to refer to his timeline and notes on multiple occasions to "remember" what happened in the

holding room.  A123-A124.  Rosser stated that he first learned the names of the officers involved during his criminal trial.  A116.  Rosser claimed that only three officers were involved in the altercation – Det. Mikus, Cpl. Donovan and Det. Orzechowski.  A115-A116.

Rosser admitted that he stood at the doorway when he heard officers outside the holding room door.  A107.  Rosser admitted Det. Mikus told Rosser to sit down.  A108-A109.  Rosser admitted he refused to sit down and told officers that he would not sit down until he figured out why he was being detained.  *Id.*  Although, at that time Rosser knew he had "shot at someone," robbed someone, and possessed a gun knowing he was not supposed to.  A101-A102.  Rosser admitted nothing preventing him from sitting on the bench in the holding room and he could have sat down and repeated his request.  A111.  Instead, Rosser decided there was "no reason to" to back away from the door and sit down.  A110.

Rosser could not remember what happened next.  He either was shoved or struck in the face by Cpl. Donovan and then taken to the ground.  A111-A118.  After Rosser was taken to the ground he was handcuffed, left hand immediately followed by his right.  A115.  Rosser admitted he spat toward Cpl. Donovan.  A119.  Cpl. Donovan said "we have a spitter" and struck Rosser in the face.  A120.  A spit hood was placed over Rosser and he was held on the ground until EMS personnel arrived.  A121.  After checking his notes, Rosser provided that he requested the handcuffs be loosed once when the handcuffs were first applied and one time after being placed on a stretcher.  A124.

Officers Collins and Christopher were not mentioned in Rosser's deposition, but according to the Second Amended Complaint they: "stood by and did nothing to stop [the] beating;" were the officers who accompanied Rosser to the hospital; and Rosser requested they loosen his handcuffs.  D.I. 52 ¶¶ 5, 10, 11, 12.  During his deposition Rosser was unable to remember the

name or describe any physical features of the officer who allegedly told him "if you act up or if you tell them what happened, we're going to get you again."  A129-A130.

Eleven photographs were taken of Rosser after the incident: seven while he was at Christiana Hospital and four when he returned to the police station.  A197-A207.  Rosser acknowledged that the photographs were accurate and contends the handcuffs and leg cuffs were not loosened from the time they were placed on him at the police station until the time they were taken off following his return from the hospital to the police station.  A134-A135, A173-A174.  Photographs six and seven of the set show a person's finger in-between the metal of the handcuff and each of Rosser's wrist.  A202-A203.

Some of Rosser's medical records were reviewed during his deposition.  According to the Emergency Department Provider note, Rosser was "personally interviewed." A208-209.  The note also indicated that "Patient declined TdaP booser.  [D]enies blood at back of throat, does not want to open mouth wide with use of tongue depressor for exam." *Id.*  During his deposition, Rosser claimed that he did not remember speaking with medical personnel at Christiana Care Hospital.  A154-A155.  However, Rosser admitted there is no reason to dispute that the medical provider interviewed him.  A155.  Photographs taken at the hospital show that the hood was removed (A197-200) and the Emergency Department Provider note indicated that Rosser had "blood from left nares, swelling at right orbit and face." A208-209.  The Emergency Department Provider note did not reference a wrist injury. *Id.*

Rosser testified that he is honest with his medical providers and does not leave out any complaints of pain or unusual sensation.  A85-A86.  The only exception was his visit immediately after the incident when he felt intimidated by a police officer, so he did not tell the providers what happened. *Id.*  However, Rosser explained that the medical staff that performed his intake at

Howard Young Correction Center on July 14, 2014 did not make any threats to him and the threatening officer was not present.  A140.  Rosser admitted he lied to them when he said the bruise on his face was from a fight the previous day.  *Id.*

Other than treatment in the Christiana Care Emergency Department and treatment for right eye swelling at prison upon his arrival, Rosser agreed that his next medical treatment he received ostensibly related to the incident in this case was almost two years later – May 20, 2016 – just four days after signing the Complaint in this case.  A164-A166.  Indeed, prison medical records indicate that Rosser was cleared for segregation on July 14, 2014 with a slightly swollen cheek bone and he denied any pain on July 16, 2014, two days after the holding cell incident.  A246.  Medical records also indicate no other treatment for injuries related to the July 14, 2014 holding cell incident until May 20, 2016.  *See* A210-246.  Rosser was allegedly injured in prison on February 2, 2017 and complained of nose, face and back pain, and leg, hand and finger numbness resulting from that incident.  A168-A169, A224.

## ARGUMENT

### STANDARD OF REVIEW

The court shall grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). While the moving party bears the burden of proving that no genuine issue of material fact exists, the movant "has no obligation to produce evidence negating its opponent's case." *National State Bank v. Federal Reserve Bank of New York,* 979 F.2d 1579, 1581 (3d Cir. 1992). Rather, the movant can simply "point to the lack of any evidence supporting the non-movant's claim." *Id.* A party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue" for trial. *Podobnik v. United States Postal Serv.,* 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322.

When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007). As explained by the Third Circuit, when a *pro se* plaintiff's account of excessive force is divergent and conflicting, with the only support stemming from deposition testimony and self-serving statements, then the claim should be dismissed on a motion for summary judgment. *Damiani v. Duffy*, 2018 WL 5881526, at *4 (3d Cir. Nov. 9, 2018).

I.   **SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THE OFFICERS' ACTIONS WERE OBJECTIVELY REASONABLE AS A**

**MATTER OF LAW AND THEY ARE ENTITLED TO QUALIFIED IMMUNITY.**

The doctrine of qualified immunity protects actions by police officers in the hazy border between excessive force and acceptable force. *Mullenix v. Luna*, 136 S.Ct. 305, 309 (2015). As recently explained by the Supreme Court when clarifying excessive force jurisprudence:

> [Q]ualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. We have repeatedly told courts not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.

*Id*. at 308 (internal quotation marks and citations omitted). Reviewing the undisputed factual record and applicable law, the Officers' conduct was objectively reasonable and nothing in the record supports any claim that a reasonable officer would know that the particular actions employed by the Officers would constitute an excessive use of force.

**A.    The Use of Force Was Reasonable Under the Circumstances Because Rosser Refused Police Orders, Engaged in Conduct the Officers Perceived as Threatening, and Continued to Resist Officers' Efforts to Collect Evidence During Execution of the Search Warrant.**

The Fourth Amendment and its "reasonableness" standard should be used to analyze all claims which allege that law enforcement officers used excessive force during an arrest. *Graham v. Connor*, 490 U.S. 386, 395 (1989). *See also*, *Majette v. Turner*, 2017 WL 3055509, at *6 (D.N.J. July 18, 2017) (applying the Fourth Amendment framework when plaintiff claimed excessive force

while being detained in a holding cell).  The reasonableness of force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 397.  "[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application."  *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).  Rather, it "must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."  *Id*. at 396-97. Relevant factors include:

> the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight. A court in making a reasonableness assessment also may consider the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.  *Kopec v. Tate*, 361 F.3d 772, 776-77 (3d Cir. 2004) (internal citations omitted).

It also is appropriate to consider the severity of injury caused by the use of force.  *See Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997) ("We do not agree that the absence of physical injury necessarily signifies that the force has not been excessive, although the fact that physical force was of such an extent as to lead to injury is indeed a relevant factor to be considered as part of the totality.").  *Cf. Ingraham v. Wright*, 430 U.S. 651, 674 (1977) (explaining "[t]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned."); *Tracy v. Freshwater*, 23 F.3d 90, 97 (2d Cir. 2010) (finding minor injuries including a small laceration or abrasion bolstered the Court's conclusion that force was reasonable).

Rosser, by resisting and refusing to cooperate, created a tense and rapidly evolving situation, justifying the Officers' reasonable use of force in executing the search warrant.  The

Officers were acting pursuant to a warrant to collect gunshot residue and DNA samples for two violent crimes for which Rosser was the suspect. A19, A27. When the door to the holding room was opened, Rosser was standing in the doorway and refused police orders to back up and sit down. A107-A110. Rosser knew he robbed and shot at someone just hours before and knew he had gun residue on him, yet he attempts to justify his refusal to follow police orders because the Officers would not tell him why he was being held. A104-A109. Det. Mikus knew Rosser was the suspect in a violent crime and perceived Rosser's actions as threatening. A34. Rosser's actions justified the Officers' use of reasonable force to gain control of the situation, protect themselves from harm, and to collect evidence. The fact that the Officers had to hold Rosser down until EMS personnel arrived is further evidence that Rosser continued to resist and was not cooperating with the Officers' commands.

Medical records from the hospital visit indicate Rosser's minor injuries were consistent with reasonable force necessary to get him to comply with the Officers' commands. Rosser agreed in his deposition that, other than the day of, and the day after the incident, he did not seek any medical treatment related to the incident for almost two years (and four days after he filed his Complaint). A165-A166, A210-A246. Prison medical notes from July 14-15, 2014 indicate only a slightly swollen cheek bone and right eye swelling. A246. In fact, medical records from July 16, 2014 note that Rosser denied any pain. *Id.* Moreover, once Rosser began to seek treatment, his medical records show only subjective complaints of injury – back pain, neck pain, rib pain, a burning sensation in his leg and calf, numbness in his left leg, and headache. A210-236. No tests were conducted to determine whether Rosser had any objective documentable signs of injury. Rosser's *de minimis* injury further supports the conclusion that the use of force was reasonable. The discovery deadline in this case was November 13, 2018, and Rosser has not identified a

medical expert to opine that his injuries are permanent.

Summary judgment should be granted because Rosser's claim of excessive force fails as a matter of law and the record clearly shows the Officers applied an objectively reasonable amount of force due to Rosser's aggression and resistance.

### B.    Rosser Has Failed to Raise any Genuine Issue of Material Fact and his Allegations are Inconsistent and Unsupported by Objective Evidence.

Rosser's claims that Officers beat him when he refused to sit down and that he did nothing further to cause the use of force is belied by the record.  His case is based entirely on conclusory allegations.  The Third Circuit recently held that such claims, without more, should be dismissed. *Damiani*, 2018 WL 5881526, at *4.  *See also*, *Bonilla v. City of York*, 2016 WL 3165619, at *10 (M.D. Pa. June 7, 2016), *aff'd*, 695 F. App'x 643 (3d Cir. 2017) (refusing to accept plaintiff's version of events that was contradicted by the record and granting defendants' summary judgment motion); *Burbage v. City of Wilmington*, 461 F. Supp. 2d 236, 243 (D. Del. 2006) (granting summary judgment when only plaintiff's unsubstantiated claim supported allegation that police squeezed his genitals during pat down); *Joynes v. Meconi*, 2006 WL 2819762, at *10 (D. Del. Sept. 30, 2006) (dismissing section 1983 claims against committee members where complaint lacked particularized allegations of conduct, time, and place); *Sanders, v. Workman*, 2003 WL 722189, at *3 (D. Del. Feb. 13, 2003) (granting summary judgment to police defendants where plaintiff's claim of injury was completely contradicted by sworn affidavit testimony from the officers); *Samuels v. Hall*, 2004 WL 1635529, at *3-4 (D. Del. July 19, 2004) (granting defendants summary judgment after accepting the sworn officer testimony that plaintiff was not handcuffed and was resisting and finding plaintiff's version of events was contradicted by all witnesses).  *See also Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) ("[C]onclusory, self-serving affidavits [and testimony] are insufficient to withstand a motion for

summary judgment."); *Mumtaz v. Etihad Airways & Airlines*, 2014 WL 7405216, at \*6 (D.N.J. Dec. 30, 2014) (court does not have to accept the allegations of the plaintiff at summary judgment that are patently contradicted by the plethora of the evidence before the Court).  In *Damiani v. Duffy*, the Third Circuit held that this Court properly granted defendants summary judgment where a plaintiff's claims for excessive force were contradicted by the objective evidence and by the plaintiff's own memory and versions of the events.  *Damiani*, 2018 WL 5881526, at \*4.  In *Damiani*, photographs of the plaintiff's injuries were consistent with the use of reasonable force and the only evidence that supported the plaintiff's account was his own deposition testimony and comments from his internal complaint with the Delaware State Police.  *Id.*

As in *Damiani,* Rosser's "divergent and conflicting narratives . . . are insufficient, standing alone, to permit his claims to survive summary judgment."  *Id.*  Rosser admitted that he did not have a clear memory of the events that transpired in the holding room on July 14, 2014.  A103. During his deposition he often looked down to his notes, timeline, or complaints because he claimed he could not remember the events of July 14, 2014.  A123, A127.  Certainly, his testimony and the objective evidence in this case show that he had difficulty recollecting he events in this case.  That may be because he only learned the identity of the Officers during his criminal trial and was able to draft a Complaint to get discovery, including the Use of Force Reports.  Upon his receipt of the Use of Force Reports, he amended his Complaint to include additional allegations and new defendants that were not involved in the use of force.  Rosser also testified that three, not four, officers were present during the use of force.  A115.  Rosser repeatedly looked down to his notes to "make sure that [his] timeline was correct."  A123.  Rosser testified that he did not remember talking to hospital staff despite medical records to the contrary.  Rosser testified that he did not speak to medical providers at Christiana Hospital because he "was afraid to."  A131.  But

the medical records show that Rosser was interviewed during his visit to the hospital. A208. Rosser then provided he has no reason to dispute he was interviewed.  A155.  Rosser also admitted that he lied to medical providers at the Howard Young Correctional Center later the same day about how he sustained the injuries to his face.  A140.

Like *Damiani*, all the objective evidence in this case—photographs and medical records— show that the force used by the Officers was reasonable and any injury of Rosser was *de minimus*. Moreover, the timing of the majority of the medical treatment is concerning.  Almost two years passed between the incident and when Rosser decided to seek medical treatment for the holding cell incident, which suggests that medical treatment was received for ulterior motives.  A165.

### C.   Rosser's Claim that the Handcuffs Caused Injury is Negated by Objective and Undisputed Evidence.

One of Rosser's claims for excessive force is that his handcuffs were too tight, which caused him injury.  However, the objective, undisputed evidence dispels this claim.

In *Giles v. Davis*, the Third Circuit held that the alleged tightness of the plaintiff's handcuffs did not constitute excessive force as he expressed no obvious, visible indicators of pain, nor did he seek or receive medical treatment thereafter.  427 F.3d 197, 207-08 (3d Cir. 2005). There, while the plaintiff alleged in the complaint that the handcuffs were too tight, the absence of any other sign of physical pain failed to establish a violation of a constitutional right.  *Id.* at 208; *See also Graham-Smith v. City of Wilkes-Bare*, 2017 WL 1386232 at *6, (W.D. Pa. Apr. 18, 2017) (holding that plaintiff's subjective complaints that handcuffs were too tight without obvious visible indicators of pain, such as falling to the ground or fainting did not amount to a constitutional violation).  Following *Giles*, the Middle District of Pennsylvania approved the "pinky test"— enough space to allow placing a pinky between the handcuff and wrist—for determining whether handcuffs are too tight which may rise to the level of excessive force.  *Graham-Smith*, 2017 WL

1386232 at *6.

Rosser failed to offer any evidence other than his subjective complaints that his handcuffs were too tight.  Twice Rosser made a request for his handcuffs to be loosened.  No evidence of physical pain or obvious expressions or visible indicators of pain has been presented.  The medical records from the hospital do not note any injury to Rosser's wrists and he did not complain of injury to his wrists until almost two years after the date of his claimed injury.  A208-A209.

In addition, Rosser's claim for excessive force related to the tightness of his handcuffs must fail because the handcuffs passed the "pinky test."  Rosser testified that his handcuffs were never loosened until they were removed and the photograph of his hands in the handcuffs were accurate—including two photographs that showed a pinky in between the handcuff and each wrist.  A134-A135, A174, A202-A203.  These photographs show that the handcuffs passed the pinky test as articulated in *Graham-Smith*.

### D.    Rosser Has Not Alleged Any Facts Regarding Defendants Collins's and Christopher's Presence of Involvement in the Holding Room Use of Force thus a Duty to Intervene Did Not Exist as a Matter of Law.

Rosser alleges in his Second Amended Complaint that Ofc. Collins and Det. Christopher should be liable for excessive force for their failure to intervene.  D.I. 52 ¶¶ 5, 10, 11, 12.

"[A] police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior."  *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).  "However, an officer is only liable if there is a realistic and reasonable opportunity to intervene."  *Id.* at 651.  Recently, the District of Delaware held that general allegations of failure to intervene, without more, are insufficient to withstand a motion for summary judgment.  *Wilson v. Miller*, 2018 WL 5817006, at *4 (D. Del. Nov. 5, 2018).  In *Miller*, the plaintiff alleged that a defendant police officer failed to intervene when he "failed to

stop Officer Porter from assaulting plaintiff and stood by and did 'nothing'"  *Id.*  The Court

dismissed the failure to intervene claim because the Plaintiff did not submit any facts or evidence

establishing that the defendant officer had a realistic and reasonable opportunity to intervene.  *Id.*

Similarly, Rosser has not provided any evidence that Ofc. Collins or Det. Christopher failed

to intervene when the other Officers allegedly used excessive force or that they had a realistic and

reasonable opportunity to do so.  Rosser testified in his deposition that only three officers were

involved in the altercation – Det. Mikus, Cpl. Donovan and Det. Orzechowski.  A115.  When

asked about the officers who transported Rosser to the hospital and made alleged threats, Rosser

did not identify Defendants Collins or Christopher and could not provide any identifiable features.

A129-A130.

Undisputed evidence shows that Ofc. Collins and Det. Christopher were not in the vicinity

of the use of force when it occurred.  Because Rosser failed to allege any facts that support his

claim that Ofc. Collins and Det. Christopher failed to intervene and had a realistic and reasonable

opportunity to intervene, the claim should be dismissed.

## II.      ROSSER'S CLAIM FOR "EMOTIONAL INJURIES" IS INSUFFICIENT TO ESTABLISH A CLAIM FOR INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

Rosser's Complaint includes a claim for compensation for "emotional injuries" related to

the alleged excessive force in this case.  D.I. 1 § VII; D.I. 29 § VII; D.I. 57 § VII.  To the extent

that Rosser attempts to assert a claim for negligent or intentional emotional distress against the

Officers, such claim must fail for lack of adequate factual support and the immunity provided

under state law for this type of claim.

"Under Delaware law, a claim for intentional infliction of emotional distress arises when

'[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional

distress to another.'"  *Barrett v. McDonald*, 2015 WL 5679732, at *21 (D. Del. Sept. 25, 2015). The Second Amended Complaint failed to allege and Rosser has failed to identify any evidence that Rosser suffered emotional distress that was so severe as to be extreme or outrageous.

"Under Delaware law, a claim for negligent infliction of emotional distress requires: '(1) negligent conduct that proximately causes emotional distress; and (2) the emotional distress is accompanied by non-transitory, recurring physical phenomena.'"  *Id.*  Rosser failed to plead or provide any evidence of any physical phenomena that accompanied his alleged "emotional injuries."  Rosser's claim for relief for "emotional injuries" without more is insufficient to establish a claim of intentional or negligent infliction of emotional distress.

Additionally, Rosser's request for compensatory damages based on "emotional injuries" sounds in tort and he seeks the recovery of monetary damages.  D.I. 56 § VII.  To the extent Rosser's claim of emotional injury can be read to be a state law claim, the County and Municipal Tort Claims Act ("Act") provides "all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages."  *See* 10 *Del. C.* § 4011(a). Rosser's allegations do not identify any act or injury that would meet the narrow statutory exceptions of the broad immunity provided by the Act.  *See* 10 *Del. C.* § 4012; *King v. McKenna*, 2015 WL 4040437, * 7 (Del. Super. June 29, 2015).   Accordingly, the Act provides immunity from Rosser's emotional injury claim.

## <u>CONCLUSION</u>

For all the reasons stated herein, Defendants request this Honorable Court to GRANT the Defendants' Renewed Motion for Summary Judgment on all claims.

19

NEW CASTLE COUNTY OFFICE OF LAW

*/s/ Mary A. Jacobson*

Mary A, Jacobson (Bar ID No. 3508)
First Assistant County Attorney
E-mail: mary.jacobson@newcastlede.gov
87 Reads Way
New Castle, DE 19720
Telephone: (302) 395-5130
*Attorney for Defendants*

Dated:  October 7, 2019